FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 MAR -1 PM 1: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| ARTHUR EARL THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 00-CO-1901-S |
| | ) | |
| SGT. T. CRENSHAW, | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED

MAR 0 1 2004

**MEMORANDUM OF OPINION**

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which plaintiff, Arthur Earl Thompson, alleges that his constitutional rights were violated while incarcerated at W.E. Donaldson Correctional Facility in Bessemer, Alabama. In his *pro se* amended complaint, plaintiff names Officer Toni Crenshaw as a defendant.[1] He seeks compensatory and punitive damages. In accordance with the usual practices of this Court and 28 U.S.C. § 636(b)(1), the complaint was referred to a magistrate judge for a preliminary review and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

On December 22, 2000, the magistrate judge entered an order for special report directing that copies of the complaint in this action be forwarded to defendant Crenshaw, requesting that she file a special report responding to the factual allegations of the complaint. On February 23, 2001, defendant Crenshaw filed her special report attaching pertinent documents and an affidavit. By order

---

[1] Plaintiff named numerous defendants and set forth additional claims in his amended complaint. (Document #7). In a Report and Recommendation entered November 28, 2000 (Document #8), the magistrate judge recommended the dismissal of all claims except the excessive force claim against Sergeant Crenshaw. By order entered December 19, 2000 (Document #10), United States District Judge Edwin L. Nelson adopted the magistrate judge's report and accepted his recommendation, dismissing all claims against all defendants except the excessive force claim against Sergeant Crenshaw in her individual capacity.



of March 5, 2001, the parties were notified that the special report filed by defendant Crenshaw would be construed as a motion for summary judgment, and plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*. Plaintiff did not file a response. On April 30, 2001, the magistrate judge recommended (Document #18) defendant Crenshaw's motion for summary judgment be denied. No objections were filed by either party. On May 29, 2001, Honorable Edwin L. Nelson, adopted the magistrate judge's report and recommendation, denied defendant Crenshaw's motion for summary judgment, and ordered that defendant Crenshaw be served with a copy of the summons and complaint as required by Rule 4 of the *Federal Rules of Civil Procedure*. (Document #21).

On July 2, 2001, defendant Crenshaw answered plaintiff's complaint (Document #23), denied each and every allegation contained in the only remaining count[2] of said complaint, and asserted the affirmative defense of qualified immunity. On November 30, 2001, the magistrate judge entered a Scheduling Order which set out various pre-trial deadlines, including an opportunity to file motions for summary judgment no later than fifteen (15) days after March 15, 2002, the deadline for completion of discovery. (Document #24, at 1). The Order states, "that, if the plaintiff or defendant . . . filed a motion for summary judgment in the special report stage of this action and summary judgment was denied at that time, unless there is additional evidence before the court that a party thinks would now make summary judgment proper, a summary judgment motion probably should not be filed because such would be redundant." *Id.* at 1-2.

On April 1, 2002, defendant Crenshaw (Document #32) filed a second motion for summary judgment. On April 11, 2002, plaintiff was again notified (Document #34) of the provisions and

---

[2] Count I is a claim of excessive force against defendant Crenshaw.

consequences of Rule 56 of the *Federal Rules of Civil Procedure*. On April 16, 2002, and April 24, 2002, plaintiff filed a counter affidavit (Document #35) and objections (Document #36) to defendant Crenshaw's second motion for summary judgment.

It is also noted that after the magistrate judge's scheduling order, discovery disputes arose between plaintiff and defendant. On January 8, 2002, plaintiff timely filed a request for production of documents directed to defendant Crenshaw. (Document# 27). Said request was accompanied by a certificate of service which contained plaintiff's affirmation that a copy of said request had been mailed to defendant's counsel. After receiving no response from defendant, on February 28, 2002, plaintiff filed a motion to compel (Document #29) defendant Crenshaw's compliance with the requests for production.

On March 18, 2002, plaintiff filed request for judicial notice of certain adjudicative facts (Document #30), in which he complained about the veracity of the time reported on the June 25, 2000, body chart produced by defendant Crenshaw, and contended that a second body chart was performed on the same date which was not produced by defendant Crenshaw. The magistrate judge construed plaintiff's request (Document #30) as a request for production of certain medical records, and the request was addressed along with plaintiff's motion to compel the production of other medical records.

On March 29, 2002, the magistrate judge ordered defendant Crenshaw either to file a written response to plaintiff's motion to compel or comply with plaintiff's requests within twelve (12) days of the entry date of the order. On April 5, 2002, defendant Crenshaw proffered a response to plaintiff's requests for production, and on April 24, 2002, plaintiff objected to said response. (Document #36, at 4-6).

While in the cage, defendant Crenshaw "started spraying me with high pressure hot water hose, and maliciously spraying me for over 30 min[utes]. . . [causing] . . . skin injuries." *Id.*

B. *Special Report*

Sergeant Crenshaw was on duty as a rover in the south unit on June 25, 2000. (Exhibit A to Document #12). A certified copy of an Institutional Incident Report reflects plaintiff was placed in the holding cell for "#38, indecent exposure/exhibitionism." *Id.* at 4. The report also reflects plaintiff and another inmate were masturbating while in the holding cell, and after being told to stop, defendant Crenshaw sprayed water into the holding cell at approximately 8:15 a.m. *Id.* Crenshaw attests she:

> [U]tiliz[ed] a regular heavy duty industrial hose to spray the surface of the holding cell to remove what appeared to be semen, and to prevent the plaintiff, inmate Thompson, from sitting down with other inmates in an effort to conceal his action, as-well-as theirs, of masturbating. I . . . instructed the plaintiff inmate Thompson, as well as others in the cell, to move to the opposite side of the cell prior to hosing down the area. However, the plaintiff and the other inmates refused to comply and in the process were inadvertently splashed with what amounted to a very minimal amount of water. All inmates who complained were promptly escorted to the Health Care Unit where they were given a body chart due to said water getting on them . . . . I . . . deny . . . that I intentionally sprayed the plaintiff . . . with hot water from a high-pressure hose.

*Id.* at 1.

Medical records show plaintiff was taken to the prison's Health Care Unit on June 25, 2000, at approximately 8:58 a.m. (Exhibit B to Document #12) at 1. The nurse's notes with regard to the plaintiff's physical examination reflect "v/s stable ø acute stress noted. . . Reported as masturbating before coming into the infirmary. Affect flat. Very arrogant to situation. ø noted cuts, bruises or lacerations to . . . (unintelligible) resp[iration] even [and] unlabored . . . ." *Id.* Plaintiff did tell the

6

### 2. Objection to Motion for Summary Judgment

Plaintiff also submitted a timely objection (Document #36, at 1-2) to the second motion for summary judgment, in which he contends the affidavit signed by Warden Bullard should not be considered because "Warden S. Bullard has no [personal] knowledge concerning the incident on June 25, 2000." He declares defendant Crenshaw has presented no supporting affidavits showing plaintiff was sprayed with cold, as opposed to hot water. *Id.* at 2.

### C. Additional Response to Discovery

On September 30, 2003, defendant (Document #40) was ordered to produce documents in response to discovery requested by plaintiff. On October 14, 2003, defendant submitted additional documents. (Document #41). Included within the documents are the body charts of inmates David Crews and Michael Hardnett. *Id.* at 7-8. These inmates were taken to the health care unit at approximately 11:20 a.m. on June 25, 2000, "per DOC" and both inmates indicated to the nurse that there was "nothing wrong" with them. *Id.* The nurse's examination revealed no signs or symptoms of distress, and no cuts, bruises or lacerations on the bodies of either inmate. *Id.*

Plaintiff also revisited the health care unit at approximately 5:30 p.m. on June 25, 2000. *Id.* at 10. He told the nurse,

> I've got a knot in my neck and it hurts. It's a burning pain. And the skin on my arms and my back is burning. It goes from hot to cold. One of the Sergeants spray[ed] me with hot water for 20 minutes.

*Id.*

The nurse's examination revealed "no burns . . . to any area of the body.'" *Id.* However, she did find a "nodule (appears to be swollen lymph node) [about] 1 ½ cm in diameter" on the right side of plaintiff's neck under the jawline. *Id.* The nurse found no other abnormalities, and plaintiff

9

when he got out of the shower, that he had the problem for approximately one week, and that the burning sensation had gotten worse since July 7, 2000. *Id.* He also complained he was sleeping too much. *Id.* The nurse found plaintiff's neck to be supple, with no tightness. However, plaintiff flinched away when touched. Plaintiff had no difficulty swallowing or speaking. *Id.* Other pertinent portions of the nurse's notes are illegible. Plaintiff was given a prescription for Percogesic tablets and Robaxin[8]. *Id.* at 15.

During another visit to the health care unit on July 28, 2000, plaintiff continued to complain about a burning sensation to his skin "'at the top [left] shoulder - for about 3-4 days. No change in soap.'" *Id.* at 22. The nurse found no rash, redness, or excoriation to plaintiff's skin and wrote, "general healthy appearance." *Id.* She referred plaintiff's "complaint of [questionable] rash, NAD" to a physician for evaluation, but also recommended plaintiff "drink plenty of fluids[,] use mild soap for washing, tepid water." *Id.* On July 28, 2000, plaintiff was prescribed PCN[9] and Tylenol, and on July 31, 2000, plaintiff was prescribed Benadryl. *Id.* at 13 and 15. On August 14, 2000, plaintiff registered the same complaint, and stated, "'the medicine took it away and caused another problem. No rash . . . No change in soap.'" *Id.* at 21. Again the nurse found no rash, redness "or excoriated areas," and referred to the "MD orders." *Id.* Plaintiff was given a prescription for Selsun shampoo.[10] *Id.* at 15.

---

[8] This medication is a tablet "indicated as an adjunct to rest, physical therapy, and other measures for the relief of discomforts associated with acute, painful musculoskeletal conditions. *Infra,* note 3, at 2939.

[9] This medication is unknown.

[10] This is a shampoo to treat "tinea versicolor, dermatitis of the scalp, and . . . dandruff. *Infra,* n 3, at 3053.

11

On August 16, 2000, plaintiff complained the top of his chest was burning. *Id.* at 20. At his medical appointment on August 18, 2000, plaintiff told the nurse,

> The Tagamet hadn't (sic) helped. It starts when I get out of [the] shower [and] sweat [and] lasts until I cool off. It's the skin. Cream and shampoo don't help. The white [blood pressure] pill don't (sic) help. (Captroped?) The big white [blood pressure] pill gives me a headache.

*Id.*

The nurse found no rash on plaintiff's chest, and wrote "currently prescribed Selsun [for] relief. Previously stated Benadryl effective but side effects. Currently prescribed Cardizem and . . . Caproped . . . for [hypertension.]" *Id.* She planned to send plaintiff's medical "jacket" to the physician for evaluation. *Id.* On August 25, 2000, the physician prescribed Cardizem, Capoten, and Benadryl. *Id.* at 13. The legible interdisciplinary notes associated with these prescriptions show that the physician found no burns, but also wrote "allergic reaction." *Id.* at 17.

On September 8, 2000, plaintiff told the doctor his "skin burn[ed]." *Id.* at 17. The physician's objective examination is illegible. *Id.* To the extent that they are legible, the doctor's notes read, "UA with microscopy, PBS X 24 hours, Bactrim[11] . . . tab[lets] [twice a day for] 15 days. *Id.* at 13.

The rest of plaintiff's medical records show that for the remainder of the year 2000, plaintiff only complained about urinary problems, a testicular knot and swelling, hemorrhoids, tooth and gum pain, a knot on his right foot, and a knot on his neck with earache. (Document #41). He also received blood pressure tests, blood sugar tests, and an eye check up and eyeglasses.

---

[11] Plaintiff complained of problems with urinating on September 7, 2000. Bactrim is a medication used to treat urinary tract infections. *Infra,* note 3, at 2949.

12

The Court notes that defendants' final production (Document #46) contains no new documents material or relevant to this action.

## QUALIFIED IMMUNITY

Defendant Crenshaw has asserted the affirmative defense of qualified immunity. However, "[i]n this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. . . . The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or motion for summary judgment. If he has done so, that is the end of the inquiry." *Skrtich v Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), *citing Johnson. v. Breeden*, 280 F.3d 1308, 1319 (11th Cir. 2002) (*quoting Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), and *Hudson v. McMillan*, 502 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). As such, the defendant's request for qualified immunity is due to be denied and the remainder of this recommendation analyzes whether the plaintiff has alleged sufficient facts to survive the defendant's motion for summary judgment.

## EIGHTH AMENDMENT

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992), the Supreme Court held that

13

"whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson v. McMillian*, 503 U.S. at 6 (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the force used was excessive. These factors include: 1) "the need for application of force"; 2) "the relationship between that need and the amount of force used"; 3) "the threat 'reasonably perceived by the responsible officials'"; 4) "any efforts made to temper the severity of a forceful response"; and 5) "the extent of the injury suffered by the inmate." *Id*. at 7.

With regard to the first factor, plaintiff does not deny defendant Crenshaw's contention that he and another inmate were masturbating in the holding pen. Nor does plaintiff deny he was given a direct order to move to the other side of the pen while defendant Crenshaw washed an unoccupied area of the pen with the water hose. The first factor weighs heavily in favor of defendant Crenshaw because she was entitled to take disciplinary action, to include the use of force if necessary, in response to plaintiff's disobedience. Defendant Crenshaw was entitled to use some force to clean

14

semen from the holding cell. It is a matter of common knowledge that such bodily fluids are carriers for numerous sexually transmitted diseases. However, defendant Crenshaw is not entitled to spray plaintiff with a high pressure hot water hose for 30 minutes while he is not being physically threatening to her or other inmates.

Counsel for defendant Crenshaw argues plaintiff's assertions that he was sprayed with a high powered hot water hose for 30 minutes are completely implausible. In support of this argument, counsel requests that this court consider six (6) photographs which are purportedly of a holding pen, water faucet, tap, and hose, and a March 27, 2002, affidavit of Warden Bullard in which he attests said photographs are true and accurate representations of the "existing" areas and objects which are the subject of concern. (Exhibits 1-7 to Document #32). Plaintiff objects to Bullard's affidavit on the ground that he has no personal knowledge of the incident in question. The objection is overruled, as the affiant does not purport to state what happened on the occasion in question.

Plaintiff also presents the affidavits of numerous inmate witnesses who attest they watched defendant Crenshaw spray plaintiff with a high pressure hot water hose for 30 minutes, including one inmate who was also sprayed. The Court duly notes an evidentiary contradiction between plaintiff's complaint, the witnesses' testimony, and an undisputed medical report which reveals plaintiff informed a nurse he was sprayed for only 20 minutes. However, the Court also notes defendant Crenshaw has only disputed the manner in which and purpose for which she sprayed water into the cell, but has never directly disputed the *length of time* she sprayed water into the cell. Accordingly, the second, third and fourth factors sway in plaintiff's favor.

More problematic for plaintiff is the final factor, which mandates consideration of the extent of injury allegedly suffered by plaintiff. Plaintiff contends he suffered skin injuries as a result of

15

defendant Crenshaw's actions, but has never described the nature and extent of those injuries, whether he suffered any pain because of the injuries, or presented any medical evidence to support the injuries. As such, the only evidence of any injury is derived from undisputed medical reports submitted by defendant Crenshaw.

Since plaintiff did not initially state any other inmates in the holding pen with him on June 25, 2000, were sprayed with the high pressure hot water hose, the body charts performed on inmates Hardnett and Crews after the incident, also showing no injuries to these inmates, were not particularly material or relevant during the deliberations in the first motion for summary judgment. However, the appearance of the affidavit of inmate Michael Hardnett, who now claims to have been sprayed along with plaintiff for the same time period (but describes no injuries received as a result of being sprayed), has made Hardnett's body chart very material and relevant to the issue of whether any injury was caused or could have been caused under the circumstances described by plaintiff. A review of inmate Hardnett's body chart shows that when he was taken to the Health Care Unit at 11:30 a.m. on June 25, 2000, he informed the nurse, "[t]here's nothing wrong with me." (Exhibit B to Document # 12, at 3). Moreover, her examination revealed "[no signs or symptoms of] distress or discomfort. [vital signs within normal limits.] No cuts, bruises, lacerations." *Id.* Further, although plaintiff has presented the affidavits of seven (7) inmate witnesses who stated plaintiff was sprayed with a high pressure hot water hose for 30 minutes, none of those witnesses describe plaintiff's behavior during the 30 minute interval, nor do they describe any injuries plaintiff suffered as a result of such action.

Finally, upon his first visit to the nurse after the incident at approximately 9:00 a.m., plaintiff did not mention he had been sprayed or burned with a high pressure hot water hose. Only when he reappeared in the health care unit at approximately 5:00 p.m. did he even mention being sprayed None of the medical records produced by defendant show plaintiff received any burns, cuts or bruises as a result of being sprayed. Instead, the records show treating officials could never find any evidence of a burn, rash, or excoriation to the areas plaintiff's skin about which he complained, and instead continually treated plaintiff on the basis of his described symptoms alone.

Thus, even if it is accepted that the use of force against plaintiff was excessive and done for the very purpose of causing plaintiff physical harm, plaintiff has not presented sufficient evidence to refute medical records which clearly show at best, *de minimis* injuries as a result of defendant Crenshaw's behavior. *Taylor v. McDuffie*, 155 F.3d 479 (4th Cir. 1998); *Marshall v. Odom,* 156 F.Supp.2d 525, 530 (D. Md. 2001). The information in the records also casts a shadow over the genuinely disputed factors listed above, as it is reasonable to infer from the lack of serious injury that defendant's force was not excessive. *Id.* (citing *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) ("*de minimis* injury can serve as conclusive evidence that *de minimis* force was used.")).

Although plaintiff's injuries and the force used were minor, plaintiff can still survive defendant Crenshaw's motion for summary judgment if the *de minimis* injuries he received are the result of behavior "'repugnant to the conscience of mankind.'" *Oliver v. Falla,* 258 F.3d 1277, 1282 (11th Cir. 2001) (citing *Hudson v. McMillian*, 503 U.S. at 9-10.) Construing plaintiff's allegations in his favor, defendant Crenshaw intentionally sprayed plaintiff with a high powered hot water hose for approximately 30 minutes while he was locked in a holding cage. Such behavior is repugnant to the conscience of mankind. *Jones-Bey v. Wright*, No. 3: 94-CV-0218 AS,1996 WL 137846, * 7,

(N.D. Ind. 1996), (plaintiff inmate sprayed with high pressure freezing water hose for approximately five to eight minutes), *citing Campbell v. Grammar*, 889 F.2d 797, 802 (8th Cir.1989). *See also, Hudson v. McMillian*, 503 U.S. 1, 13-14, 112 S.Ct. 995, 1002, 117 L.Ed.2d 156 (1992), wherein the water spraying incident in *Campbell v. Grammar* was cited as an example of the "kinds of state-sponsored torture and abuse– . . . ingeniously designed to cause pain but without a telltale 'significant injury.'" Accordingly, defendant Crenshaw is not entitled to judgment as a matter of law and her motion for summary judgment is due to be denied.[12]

An appropriate Order will be entered.

DATED this 25 day of Feb., 2004.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

---

[12]The court notes that this is not the first time Thompson has alleged that he was subjected to cruel and unusual punishment by being sprayed with a water hose. In *Thompson v. Key, et al.*, CV-97-H-1454-NE, Thompson made similar allegations against jailers at the Morgan County Jail.